# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § | No. 4:16-cr-54-ALM |
| DAVID TIBERIOUS ROUGEAU, | § § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Motion for a Reduced Sentence and Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) as Amended by the First Step Act of 2018 (the "Motion") (Dkt. #55). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On April 14, 2016, a Federal Grand Jury returned a nine-count indictment (the "Indictment") against David Tiberious Rougeau ("Defendant"), two counts of which are relevant here: interference with commerce by robbery in violation of 18 U.S.C. § 1951(a) ("Count 7") and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) ("Count 8") (Dkt. #12). On September 28, 2016, Defendant appeared with counsel before United States Magistrate Judge Christine A. Nowak and consented to the administration of his guilty plea (Dkt. #26). Pursuant to a written, sealed, non-binding plea agreement, Defendant pled guilty to Counts 7 and 8 of the Indictment (Dkt. #28). On October 3, 2016, the Court adopted the Findings of Fact and Recommendation on Guilty Plea made by Magistrate Judge Nowak (Dkt. #31), but deferred acceptance of the plea agreement until after review of the presentence report (Dkt. #33).

Thereafter, on March 22, 2017, the Court sentenced Defendant to a total of 168 months' imprisonment, consisting of 84 months on each of Counts 7 and 8 (Dkt. #39 at p. 2).

Defendant appealed his conviction, and on January 5, 2018, the Fifth Circuit dismissed the appeal as frivolous (Dkt. #50). On September 10, 2019, Defendant filed a Motion to Reduce Sentence, arguing that a newly decided Supreme Court case rendered the statute underlying his conviction unconstitutionally vague (Dkt. #51). The Court denied that motion on January 3, 2020 (Dkt. #52). On September 6, 2023, the Court denied Defendant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 and dismissed it with prejudice (Dkt. #54).

On August 6, 2025, Defendant filed the present Motion seeking a reduction of his 168-month sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), asserting "extraordinary and compelling" reasons, including his current medical condition (Dkt. #55 at pp. 4–5). Defendant further requests that the Court consider the following additional factors: (1) that his criminal history was overstated and driven by substance addiction (Dkt. #55 at pp. 6, 13); (2) that he has served "over 74.5%" of his sentence (Dkt. #55 at pp. 6, 16); (3) that he has made efforts to obtain a G.E.D., which he contends have been hindered by dyslexia and a lack of qualified instructional support within the Bureau of Prisons (Dkt. #55 at pp. 7, 14); and (4) that, at fifty years old, he is statistically less likely to reoffend (Dkt. #55 at p. 13). The Government filed its response on August 22, 2025, arguing that Defendant has not shown that a sentence reduction is warranted (Dkt. #56). The Court considers all arguments. *See United States v. Mitchell*, No. 4:04-CR-106-31, 2023 WL 3075941, at *4 (E.D. Tex. Apr. 25, 2023) (noting that courts construe *pro se* motions liberally).

## LEGAL STANDARD

I.    **18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final

2

judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See*

---

[1]   This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then citing *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); and then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense

---

[2]    The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

### III.    U.S.S.G.'s Policy Statement

#### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at \*2 (citing *Thompson*, 984 F.3d at 432–34) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

---

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at \*3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at \*4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

---

[4]  *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]  End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]  *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]  *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

9

**C.       Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))**

The Sentencing Commission enumerates four potential reasons for a defendant's family

circumstances to constitute an extraordinary and compelling reason for release:

(A)     The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a

family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL

812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was

disabled and that his father required caretaking were "conclusory statements" that were

"insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the

defendant's need to serve as a primary caretaker. For example, the defendant must prove with

medical support that the family member is incapacitated. *See United States v. Zermeno*,

No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United*

*States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of

10

the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *See Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an

11

administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

### IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect

the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the

requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

### I.    The Exhaustion Requirement

A defendant seeking compassionate release must first satisfy the statutory exhaustion requirement by submitting a request to the warden and either fully exhausting administrative remedies or waiting for a "lapse of 30 days" after the request is made before filing a motion in court. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); and then citing *Garrett*, 15 F.4th at 338). Although Defendant does not attach his initial request for compassionate release, the Probation Office Letter indicates he applied for a Reduction in Sentence on April 30, 2024, prior to his medical diagnosis and again on February 21, 2025, after his diagnosis.[9] Defendant does attach a letter from Elisa Mason, Acting Assistant Director and General Counsel for the Bureau of Prisons, addressed to B. Lott, Acting Warden of FMC Butner, denying his request for compassionate release (Dkt. #55 at pp. 19–20). Even if proper exhaustion were in question, the Government did not invoke § 3582(c)(1)(A)'s exhaustion requirement and therefore waived any nonjurisdictional procedural objection (Dkt. #56). *See McLean*, 2022 WL 44618, at *1 (holding that

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

[9]  The United States Probation Office noted its opposition to this request for compassionate release in a letter sent to the Court on September 11, 2025 (the "Probation Office Letter").

14

it is an abuse of discretion for a district court to deny compassionate release for failure to comply with § 3582(c)(1)(A)'s exhaustion requirement where the Government did not raise exhaustion). Accordingly, the administrative exhaustion requirement does not bar Defendant's Motion.

## II.    The "extraordinary and compelling" Requirement

To show that "extraordinary and compelling" reasons warrant a sentence reduction, the Court examines whether the reduction is consistent with the policy statement of U.S.S.G § 1B1.13. Defendant's Motion mainly falls under § 1B1.13(b)(1), relying on his current medical condition and multiple 18 U.S.C. § 3553(a) factors (Dkt. #55 at pp. 10–16). Taken together, Defendant's asserted circumstances fall short of establishing "extraordinary and compelling" reasons, so his Motion should be denied.

Courts that have granted compassionate release based on a prisoner's health problems "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434–35. Thus, "compassionate release due to a medical condition is an extraordinary and rare event." *United States v. Bazan*, No. 1:11-CR-142-1-MJT, 2024 WL 1472791, at *2 (E.D. Tex. Mar. 15, 2024) (citing *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)). The Government and the Bureau of Prisons believe that Defendant failed to meet this standard (Dkt. #55 at pp. 19–20; Dkt. #56). The Court agrees.

In the instant case, Defendant has been diagnosed with stage IV colon cancer with metastatic disease to the lungs (Dkt. #55 at p. 19). His medical providers estimate that he has a life expectancy of less than eighteen months (Dkt. #55 at p. 19). Although this diagnosis qualifies as a "terminal illness" defined as "a serious and advanced illness with an end-of-life trajectory," it does not automatically warrant relief. U.S.S.G. § 1B1.13(b)(1)(A). Rather, such a condition

15

supports compassionate release only if it "substantially diminishes" the defendant's ability "to provide self-care" within the correctional facility and if the defendant "is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). The Bureau of Prisons reports that Defendant remains independent with his activities of daily living (Dkt. # 55 at pp. 19–20).

Unless otherwise indicated, the following facts in the remaining analysis are derived from the September 11, 2025, Probation Office Letter. Defendant is classified as a Medical Care Level 2 inmate, "in chronic but stable care, regarding his physical health." Probation notes that "his care is ongoing and managed through routine, regularly scheduled appointments with physicians for monitoring his status." Although Defendant's medical condition is grave, the record reflects that it is being effectively managed within the Bureau of Prisons, and he has not demonstrated that it substantially diminishes his ability to provide self-care.

Additionally, Defendant has a history of non-compliance with medical advice and recommendations. Following adjuvant therapy in June 2024, Defendant refused to take medication against medical advice. On October 10, 2024, Defendant underwent surgery to repair a hernia, followed by a lower left lobe wedge resection with lymph node removal. Thereafter, Defendant refused chemotherapy on March 13, April 30, May 28, June 25, and July 9, 2025, despite being cautioned that declining treatment could result in progression of his cancer and potentially early death. Multiple circuit courts, including the Fifth Circuit, have rejected motions for compassionate release where an inmate refuses prescribed medical treatment, and Defendant here has likewise declined recommended chemotherapy. *See United States v. Colmenares Fierro*, No. 21-40566, 2022 WL 2357078, at *1 (5th Cir. June 30, 2022) (per curiam) (unpublished) (recognizing that an inmate's declining treatment for latent tuberculosis precluded him from relying on this condition

as a basis for compassionate release); *United States v. Broomfield*, No. 20-14514, 2022 WL 896825, at *1 (11th Cir. Mar. 28, 2022) (rejecting motion for compassionate release filed by prisoner who refused to take medications to control his blood pressure or to comply with his doctor's advice to watch his diet and to exercise); *United States v. Glasper*, 854 F. App'x 748, 749–50 (7th Cir. 2021) (denying compassionate release because inmate had refused treatment for diabetes in prison and his asthma was well controlled, which undercut his assertion that his medical conditions presented an extraordinary and compelling reason for release). Although Defendant has a right to refuse medical treatment, courts have found that it would be "paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them." *United States v. Leon*, No. 9:10-CR-29(1), 2025 WL 3496919, at *8 (E.D. Tex. Dec. 4, 2025) (citing *United States v. Gonzalez Zambrano*, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021)). Because Defendant has declined the very treatment intended to manage his condition, he cannot establish that his circumstances constitute an extraordinary and compelling reason for release.

Accordingly, Defendant's medical condition does not meet the requirements of U.S.S.G. § 1B1.13(b)(1)(B) and therefore does not warrant compassionate release.

## III.    The § 3553(a) Factors

Even if there were "extraordinary and compelling" reasons at hand, the sentencing factors under 18 U.S.C. § 3553(a) weigh against release. Under § 3553(a), courts must address the seriousness of the offense, the defendant's history and characteristics, the need to deter criminal conduct, the need to protect the public, respect for the law, and providing a just punishment. *United States v. Shaw*, No. 4:15-CR-134-03, 2025 WL 2496156, at *11 (E.D. Tex. Aug. 29, 2025) (citing *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D.

Tex. July 10, 2023)). Here, granting Defendant's Motion would undermine these factors for various reasons.

First, Defendant pleaded guilty to interference with commerce by robbery and to possession of a firearm during and in relation to a crime of violence, offenses he concedes are serious in nature and in circumstance (Dkt. #55 at p. 13). On multiple occasions, Defendant used a firearm to threaten store employees to obtain property and compel access to the store safe (Dkt. #30). *See United States v. Martinez*, 832 F. App'x 906, 906 (5th Cir. 2021) (per curiam) (unpublished) (finding "[i]t was not unreasonable for [a] court to place greater weight on the seriousness of [the] offense, including the fact that a dangerous weapon was involved in the criminal activity" when it denied compassionate release). The seriousness of this offense weighs against early release.

Next, Defendant argues that his criminal history "was overstated and was nothing more than a struggle with drugs resulting in a string of non-violent petty offenses" (Dkt. #55 at pp. 6, 12). In contrast, Probation notes that Defendant has an extensive criminal history including prior felony convictions, imprisonment sentences for theft, unauthorized use of a vehicle, robbery with a dangerous weapon, driving while license suspended, and assault. Further, Defendant had at least eight pending criminal charges at the time of sentencing in various states (Dkt. #37 at ¶¶ 72–79). Defendant was also sentenced to 105 months in the United States District Court, Western District of Texas, for interference with commerce by robbery to run concurrently with the sentence imposed by the Court (Dkt. #37 at ¶ 78).

Given Defendant's criminal history, releasing him at this time would fail to reflect the seriousness of the offense, promote respect for the law, or afford adequate deterrence. *See*

18 U.S.C. § 3553(a); *United States v. Robinson*, 2023 WL 6785840, at *1 (5th Cir. Oct. 13, 2023) (finding that the district court did not abuse its discretion in denying a defendant's motion for compassionate release, as "the district court found that Robinson committed a serious offense, had numerous prior drug convictions, and was likely to recidivate and pose a danger to the public."). Further, compassionate release at this time would ignore that Defendant "received the benefit of a plea agreement in which additional charges/counts were dismissed after he accepted responsibility that could have resulted in a far lengthier prison sentence." *See United States v. Sessions*, No. 2:20-CR-00010-JRG-RSP-8, 2026 WL 266244, at *5 (E.D. Tex. Feb. 2, 2026).

Moreover, Defendant argues that he has served "over 74.5 percent" of his prison term (Dkt. #55 at p. 5). At the time Government filed its Response, Defendant served approximately 112 of his 168-month term (Dkt. #56), and "this alone, or in conjunction with the remaining factors, does not constitute an 'extraordinary and compelling' reason to justify his release." *See United States v. Garza*, 2025 WL 964029, at *8 (E.D. Tex. Mar. 31, 2025).

Defendant also asserts that he has pursued rehabilitation by attempting to obtain his G.E.D., but the facility has not been able to accommodate his dyslexia (Dkt. # 55 at pp. 6–7). He also states that he has diligently maintained prison employment up until his diagnosis, suggesting that he is a "mature individual attempting to better himself in an uphill battle" (Dkt. #55 at pp. 12–13). While these efforts are admirable, rehabilitation is not an extraordinary and compelling reason for compassionate release. *See United States v. Hughes*, No. 4:18-CR-46(25), 2022 WL 2483720, at *4 (E.D. Tex. July 6, 2022) (collecting cases that find rehabilitation is not an extraordinary and compelling reason for compassionate release).

Lastly, Defendant says he is now 50 years old, "making him about half as likely to be convicted of a crime as a defendant released in his twenties" (Dkt. #55 at p. 13). However, his repeated disciplinary infractions during incarceration, including drug use, fighting with other inmates, and threats of violence, suggest continued noncompliance with institutional rules and weigh against a finding that he poses a diminished risk. *See* 18 U.S.C. § 3553(a); *United States v. Fye*, No. 2:98-CR-00008-01, 2022 WL 4004198, at *9 (E.D. Tex. Sept. 1, 2022) (holding that repeated prison disciplinary violations weighed against compassionate release because they reflected continued noncompliance and diminished claims of rehabilitation).

After weighing the 18 U.S.C. § 3553(a) factors, the Court finds that granting Defendant's release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for his offense, nor adequately deter criminal conduct or protect the public. *Chambliss*, 948 F.3d at 693. Accordingly, Defendant's Motion should be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for a Reduced Sentence and Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) as Amended by the First Step Act of 2018 (Dkt. #55) is hereby **DENIED.**

**IT IS SO ORDERED**.

**SIGNED this 2nd day of March, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE